**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN W. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 11-cv-2880 |
| | ) | |
| CITY OF CHICAGO, ET AL. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants City of Chicago, former Mayor Richard M. Daley, and former Daley Chief of Staff Raymond Orozco have moved to dismiss [21] former Fire Commissioner John W. Brooks' complaint. For the reasons set forth below, the Court grants in part Defendants' motion to dismiss [21] and dismisses Plaintiff's § 1983 claims for alleged constitutional violations (Counts I and II). Because the Court has dismissed the two claims over which it has original jurisdiction, Plaintiff's remaining state law claims (Counts III-V) will be dismissed without prejudice. Plaintiff may pursue those claims in state court if he so chooses.

**I. Background**

In July 2008, former Mayor Richard M. Daley appointed John Brooks to the position of Fire Commissioner and the City Council approved the appointment. As Fire Commissioner, Brooks was responsible for the Chicago Fire Department. Brooks alleges that his appointment was a permanent one, as opposed to a temporary appointment, and that he had a "constitutionally-protected right in continued public employment." Compl. at ¶ 11. Plaintiff's complaint further alleges that his job as Commissioner was "an exempt position." *Id*.

In March 2010, Defendant Raymond Orozco, at the time Daley's Chief of Staff, advised Brooks that a female Fire Department employee had raised an allegation of sexual harassment against him. As a result of the allegations, Brooks was advised that he was being placed on paid administrative leave pending an investigation. On May 1, 2010, Brooks met with Orozco again, and Orozco allegedly told Brooks that "Mayor Daley wants you out." According to the complaint, Orozco then advised Brooks that if he did not submit a letter of resignation, he would be terminated immediately or demoted to Battalion Chief. Brooks provided an undated letter of resignation to Orozco. Brooks maintains that he did not want to resign and that the letter was coerced. Brooks resignation became effective May 28, 2010.

On May 11, 2010, Brooks attended an interview with an independent investigator regarding the allegations of sexual harassment. On August 6, 2010, the City made public the findings of the independent investigator. The investigator concluded that the allegations were false and that there was no evidence that Brooks engaged in sexual harassment.

On April 29, 2011, Brooks filed a five-count complaint against the City of Chicago, Daley, and Orozco, alleging that he was "involuntarily extracted" from his position as Fire Commissioner. Brooks alleges violations of his due process rights pursuant to 42 U.S.C. § 1983 against Daley and Orozco in their individual capacities (Count I) and the City (Count II) and three state law claims for wrongful termination (Count III), "tortious interference with an advantageous business relationship" (Count IV), and intentional infliction of emotional distress against Daley and Orozco (Count V). Defendants have moved to dismiss all five counts.

## II. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d

1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Analysis**

    **A.    Federal Constitutional Claims**

In Counts I and II, Plaintiff asserts § 1983 claims for violations of his due process rights.[1] Plaintiff maintains that he had a constitutionally-protected property and/or liberty interest in his continued employment in the position of Fire Commissioner. He further maintains that he was

---

[1] In order to state a claim under § 1983, Plaintiff must allege that the Defendants were acting under color of state law when they deprived him of a constitutional right. See *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 457 (7th Cir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (citing *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997)). To allege a § 1983 violation, Plaintiff must do more then make a general allegation that his constitutional rights were violated; he must allege a deprivation of a specific constitutional right. See *Trautvetter v. Quick,* 916 F.2d 1140, 1148 (7th Cir. 1990) (citing *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 379 (7th Cir. 1988)).

3

deprived of due process of law prior to the deprivation of his property and/or liberty interest. As set forth below, even read charitably, Plaintiff's complaint directly conflicts with the City Municipal Code and Seventh Circuit precedent and fails to sufficiently allege a due process claim or an occupational liberty claim.

    *1.    Due Process*

Plaintiff alleges that Defendants deprived him of his right to be employed. The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. See *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To assert a violation of the Due Process Clause, Plaintiff must be able to show that he had a "property interest" and that he was deprived of this interest without due process of law. See *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood,* 426 U.S. 341, 343 (1976)). Specifically, Plaintiff's due process claims turn upon whether he had a property right in his position as Fire Commissioner.

To demonstrate that he was deprived of a protected interest, Plaintiff "must first establish that he had a property interest * * * of the sort that the Constitution protects." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For example, in the context of fired public employee bringing a procedural due process claim against his employers, the Seventh Circuit recently stated that "[a] property interest in continued employment 'can be created in one

4

of two ways, (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Phelan*, 347 F.3d at 681). To support a due process claim in the context of public employment, the Seventh Circuit held that the plaintiff must have an "entitlement to continued employment," such as a collective-bargaining agreement. *Palka*, 623 F.3d at 452 (citing *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988); *Krieg v. Seybold*, 481 F.3d 512, 519-20 (7th Cir. 2007)). Plaintiff bears the burden of proving that he had a property interest in his employment as Fire Commissioner. See *Krieg v. Seybold,* 481 F.3d 512, 520 (7th Cir. 2007) (holding plaintiff bears the burden of showing that he had a property interest in his job arising out of a state statute, state or municipal regulations, or a contract with a public entity).

While the Court accepts all well-pleaded facts in the complaint as true, the Court does not have to accept as true conclusory statements of law or unsupported conclusions of fact. See *Snodderly v. R. U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 896 (7th Cir. 2001). Simply claiming a property right in one's job without facts to support the naked conclusion is not enough to sufficiently plead a property interest. See *Lee v. County of Cook,* 862 F.2d 139, 141-42 (7th Cir. 1988) (holding that to assert a property interest a plaintiff must allege enough facts to show that she "has a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause"). Here, Plaintiff has alleged nothing beyond the conclusory assertion that his position as Fire Commissioner was somehow "permanent" and that he had a "constitutionally protected right in continued public employment." See Compl. at ¶ 11. Notably, he has not cited or identified any state statute, state or municipal regulation, or any contract that allegedly created this "permanent" employment. Such pleading, without any factual enhancement identifying the alleged source of the permanent employment, has been found

5

insufficient to state a claim. *Krieg*, 481 F.3d at 520 ("Accordingly, without some specific promise of employment, the CBA did not provide Krieg with a property interest."); *Collins v. Board of Educ. of North Chicago Community Unit School Dist. 187*, 2011 WL 2143115, *8 (N.D. Ill. May 31, 2011) (dismissing property right claim on Rule 12(b)(6) motion, finding that "[b]ecause a property interest is required to state a cause of action for a Due Process violation and Plaintiff has failed to allege facts from which a property interest can be conferred, Plaintiff has failed to state a due process claim."); *Allison v. Bd. of Educ. of the Plainfield Cmty. Consolidated Sch. Dist. No. 202*, 2011 WL 2292306, *3 (N.D. Ill. June 7, 2011) (dismissing property right due process claim on Rule 12(b)(6) motion where plaintiff failed to identify a contract provision that demonstrated a property right in continued employment); *Baylor v. Gary Public Library*, 2011 WL 1526950, *4 (N.D. Ind. April 20, 2011) (dismissing property right due process claim on Rule 12(b)(6) motion where plaintiff failed to allege any statutory, contractual or other basis showing that he was anything other than an at-will employee).

More problematic for Plaintiff (beyond the dearth of factual allegations supporting his claim) is that the Municipal Code of Chicago makes clear that Plaintiff's position as Fire Commissioner is classified as "exempt"—a fact also noted by Plaintiff in his complaint—and that Plaintiff was an at-will employee. See §§ 2-74-030 and 2-74-060 of the Municipal Code of Chicago ("Municipal Code"). Under the Municipal Code, City positions are classified into two categories: "career service" positions and positions exempt from career service. See § 2-74-030. Only those employees in "career service" positions are afforded procedural protections for their employment. See § 2-74-060 of the Municipal Code; *Phelan*, 347 F.3d at 682 (affirming district court's 12(b)(6) dismissal of non-career service employee's property interest due process claim). Here, Plaintiff's position as "Fire Commissioner" is expressly classified under the Municipal

Code as exempt from "career service." See § 2-74-30(4) and (13) and Appx. A (identifying "Fire Commissioner" as a noncareer service position).[2] Thus, not only has Plaintiff failed to allege specific facts to show that he was anything other than an at-will employee, his allegations that he was a "permanent" employee directly conflict with the City's Municipal Code and Seventh Circuit precedent. See *Phelan*, 347 F.3d at 682 ("Specifically, the Municipal Code distinguishes 'career service' employees and all other 'career service exempt' employees * * * * [and] [o]nly those employees in career service are afforded procedural protections for their employment."); *Omosegbon v. Wells,* 335 F.3d 668, 674 (7th Cir. 2003); *Santana v. Cook County Bd. of Review*, 2011 WL 1549240, *3 (N.D. Ill. April 25, 2011) (dismissing property right due process claim where plaintiff's employment was at-will); *Kerr v. South Cook Intermediate Serv. Ctr. 4 Governing Bd.*, 2010 WL 5482935, *4 (N.D. Ill. Dec. 30, 2010) (same).[3]

Because a property interest is required to state a cause of action for a Due Process violation and Plaintiff has failed to allege facts from which a property interest can be conferred, Plaintiff has failed to state a due process claim. See, *e.g., Lee,* 862 F.2d at 141-42 (affirming dismissal of state employee's third amended complaint where plaintiff did not allege facts showing a property interest in her job); *Smith v. Bd. of Educ. of Urbana School Dist.,* 708 F.2d

---

[2] The City's Personnel Rules also state in part: "Rule XVIIIA –Disciplinary Actions for Non-Career Service Employee: Non-Career Service employees are employed 'at will'. They may be disciplined or discharged at any time for any reason or no reason and have no expectation of continued employment * * *." See, *e.g.*, *Dennis v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on official government website).

[3] Further, to the extent that Plaintiff is attempting to allege that his purported "permanent" appointment was the result of some implied promise of continued employment, the Seventh Circuit has rejected any such argument. Specifically, in *Phelan*, the Seventh Circuit noted that it had previously "stated that because the Chicago's City Code explicitly defines different categories of employees as 'career service' or 'career service exempt' other City employees cannot make promises, implied or otherwise, of continued employment that are contrary to the Code." 347 F.3d at 682 (citing *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986)). Plaintiff's contention in his response brief that there was a "mutually explicit understanding" between himself and the City ignores the provisions of the Municipal Code (which Plaintiff fails to address) as well as Seventh Circuit precedent explicitly rejecting his position. See *id.*

258, 264-65 (7th Cir. 1983) (affirming dismissal for failure to state a claim where plaintiff's complaint did not allege facts from which a property interest in employment could be inferred).

Plaintiff's substantive due process claim, to the extent that he is attempting to allege one, also fails. This sort of claim is limited to violations of fundamental rights (see *Belcher v. Norton,* 497 F.3d 742, 753 (7th Cir. 2007)), and employment-related rights are not fundamental; an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate. See *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010); *Montgomery v. Stefaniak,* 410 F.3d 933, 939 (7th Cir. 2005). Plaintiff has not pleaded an additional constitutional violation or claimed that state-law remedies were inadequate. He therefore has failed to state an actionable substantive due-process claim.

Plaintiff's substantive due process claim also fails because Defendants' conduct falls far short of shocking the conscience. "The Due Process Clause protects citizens from abuses of power by executive officials * * * but official misconduct will rise to the level of a constitutional violation *only if it shocks the conscience*." *Palka*, 623 F.3d at 453-54 (emphasis added). In *Palka*, the plaintiff maintained that tracing the phone call he made to the CPD officer's childrens' school and then travelling outside of their jurisdiction to visit him at home one evening qualified as conscience-shocking misconduct by the officers. The Seventh Circuit disagreed. "The threshold for this kind of due-process claim is high; many forms of governmental misconduct are excluded." *Id.* at 454 (citing *Tun*, 389 F.3d at 903 ("It is one thing to say that officials acted badly, even tortiously, but – and this is the essential point – it is quite another to say that their acts rise to the level of a constitutional violation.")); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("Of course, every official abuse of power, even

8

if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation.")). Here, there are no allegations that come close to conscience-shocking.

### 2. Occupational Liberty Claim

In *Palka v. Shelton*, the Seventh Circuit also considered whether the plaintiff had adequately alleged a violation of his interest in his occupational liberty under the Fourteenth Amendment. 623 F.3d 447, 454 (7th Cir. 2010). While Plaintiff has not expressly alleged an occupational liberty claim, his allegations could be read as attempting to allege such a claim.

The concept of liberty protected by the Due Process Clause includes one's occupational liberty, or "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir. 1992). The government violates an employee's occupational liberty interest when, in the course of discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's good name, reputation, honor, or integrity" or impose a "stigma or other disability on the individual which forecloses other opportunities." *Bd. of Regents v. Roth,* 408 U.S. 564, 573 (1972). The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job. See *Townsend v. Vallas,* 256 F.3d 661, 670 (7th Cir. 2001).

Under the occupational liberty doctrine, a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Palka*, 623 F.3d at 454 (citing *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)). In cases alleging deprivation of occupational liberty, "the employee's good name, reputation, honor or integrity must be called into question in such a manner that makes it

virtually impossible for the employee to find new employment in his chosen field." *Townsend*, 256 F.3d at 670. "The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454 (citing *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986)) (holding there was no public disclosure and therefore no constitutional violation where communications regarding reasons for a discharge of an employee were disseminated internally); see also *Townsend,* 256 F.3d at 669-70; *Harris v. City of Auburn,* 27 F.3d 1284, 1286 (7th Cir. 1994) (deprivation of occupational liberty that was "virtually devoid of any information regarding the public disclosure" of the statements was insufficient to state a claim); *Clark v. Maurer,* 824 F.2d 565, 567 (7th Cir. 1987) (no injury until the damaging information is made public); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1349 (7th Cir. 1995) ("[T]he government must have actually participated in disseminating the information to the public").

To the extent that Plaintiff intended to allege an occupational liberty interest claim, his claim fails. Plaintiff has not alleged public disclosure of any stigmatizing comments by Defendants.[4] Allegations against an individual are not made public for purposes of satisfying the public disclosure requirement for a violation of a liberty interest if the allegations are only communicated internally. See, *e.g. Ratliff,* 795 F.2d at 627 (no public disclosure, and therefore no deprivation of a liberty interest, where defendants did not publicize the reasons for discharge beyond the proper chain of command within the police department); *Johnson v. Martin,* 943 F.2d 15, 16-17 (7th Cir. 1991) (no public disclosure when potentially stigmatizing information in a discharged employee's personnel file that had not been disseminated beyond the proper chain of command in the police department and had not been made public). Because Plaintiff's

---

[4] The only information that Plaintiff alleges was publicly disclosed was the independent investigator's conclusion *exonerating* him. See Compl. at ¶ 25.

complaint does not allege that Defendants disclosed this matter to the public, he has failed to plead that Defendants publically disclosed the purported stigmatizing information. As public disclosure is required to show a deprivation of an occupational liberty interest, and Plaintiff has failed to allege such disclosure, Plaintiff has failed to state a claim for a deprivation of his occupational liberty.

In response to Defendants' arguments regarding his failure to allege public disclosure of stigmatizing information, Plaintiff attempts to amend his complaint by way of assertions made in his response brief. However, it is "well established that a plaintiff cannot amend his complaint by statements made in briefs filed in opposition to a motion to dismiss." *Odom v. Sheriff and Staff*, 2007 WL 1238723, at *2 (C.D. Ill. Apr. 26, 2007) (citing *Perkins v. Silverstein*, 939 F.2d 463, 471 n.6 (7th Cir. 1991)); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Furthermore, even accepting these allegations, Plaintiff's complaint specifically refutes at least one element of an occupational liberty claim: that Plaintiff suffered a tangible loss of other employment opportunities as a result of the public disclosure. Plaintiff admits that before he resigned he was given the option of remaining employed in the Fire Department in the position of Battalion Chief, but he declined. Since Plaintiff could have elected to remain employed as a fireman, he plainly was not deprived of his "calling or occupation." At most, he was removed from a specific job, which does not give rise to an occupational liberty claim. See *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) ("It is the liberty to pursue a *calling or occupation*, and not the right to a specific job, that is secured by the Fourteenth Amendment") (emphasis in original); see also *Westphal v. City of Chicago*, 8 F. Supp. 2d 809, 813 (N.D. Ill. 1998) (noting that courts "consistently distinguish 'between occupational liberty and the right to a specific job'") (citing *Wroblewski*, 965 F.2d at 455). Even if Plaintiff were allowed to amend

his complaint to allege the first two elements—that Defendants made stigmatizing comments about him and that those comments were publicly disclosed—the allegations in his current complaint explicitly demonstrate that he cannot state an occupational liberty claim. See also *Covell v. Menkis*, 595 F.3d 673, 678 (7th Cir. 2010).[5]

In sum, Plaintiff has not alleged that he has been deprived of the right to pursue a particular calling or occupation; rather, he merely alleges that he had a liberty interest in his particular job as Fire Commissioner. The Complaint makes no allegation that Plaintiff has been deprived of any other opportunity, whether inside or outside of the Fire Department, nor even that Plaintiff has sought any other employment opportunities. Indeed, the complaint identifies one position within his occupation that he was offered but declined to accept. For all of these reasons, Plaintiff has failed to state a claim for violation of his right to occupational liberty. See, e.g., *Palka*, 623 F.3d at 454-55 (affirming 12(b)(6) dismissal of liberty interest claim where plaintiff did not allege that any stigmatizing information was publicly disclosed); *Westphal*, 8 F. Supp. 2d at 813 (dismissing liberty interest due process claim pursuant to Rule 12(b)(6) where plaintiffs did "not claim they are foreclosed from their occupation of being police officers or that the defendant's policies have foreclosed employment opportunities outside of the Chicago Police

---

[5] The Seventh Circuit's discussion in *Bigby v. City of Chicago* is particularly helpful in distinguishing between actionable claims and the type of claim that Plaintiff here has brought:

> * * * to be a policemen is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation. But a particular rank in the police force is not an occupation, just as the army is not a series of separate occupations, ranging from buck private to general of the armies, and just as the private practice of law is not composed of two occupations—partner and associate * * * * [W]hile preventing someone from advancing in his occupation can be a cruel deprivation, it would stretch the idea of liberty of occupation awfully far * * * to treat a bar to promotion as a deprivation of that liberty.

766 F.2d 1053, 1057 (7th Cir. 1985). Thus, while the demotion allegedly offered by the City may have been unwanted—or even intolerable—to Plaintiff, he was not being excluded from his occupation as a fireman.

Department."); *Santana*, 2011 WL 1549240 at *3 (granting 12(b)(6) motion to dismiss liberty interest claim where plaintiff did not plausibly allege a serious impairment of his future employment opportunities); *Baylor*, 2011 WL 1526950 at *5 (granting motion to dismiss liberty interest claim where plaintiff asserted only vague, conclusory allegations about public disclosure of alleged stigmatizing statements and did not allege lost employment opportunities).

### B. State Law Claims

In addition to his § 1983 claims, Plaintiff also sued Defendants under Illinois state law for wrongful termination (Count III), tortious interference with an advantageous business relationship (Count IV), and intentional infliction of emotional distress (Count V). Because the Court has dismissed all claims over which it has original jurisdiction, it must now address whether to retain jurisdiction over those state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[6] the Court dismisses without prejudice Plaintiff's state law claims.[7]

---

[6] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have

**IV.     Conclusion**

For these reasons, Defendants' motion for dismiss [21] is granted as to Plaintiff's federal claims (Counts I and II) and the remaining state law claims (Counts III, IV, and V) are dismissed without prejudice.

Dated: January 4, 2012                    _____
                                                         Robert M. Dow, Jr.
                                                         United States District Judge

---

not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251. Finally, this is not a circumstance in which "it is absolutely clear how the pendent claims can be decided." *Id*.

[7] As Plaintiff notes, district courts generally allow leave to amend after granting a motion to dismiss for the first time unless an amendment would be futile. See, *e.g.*, *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Barry Aviation v. Land O'Lakes*, 377 F.3d 682, 687 (7th Cir. 2004). In view of the foregoing discussion, the Court finds it very likely that any amended complaint would be futile in view of the allegations of the complaint (even as expanded in Plaintiff's response brief) and the controlling legal principles. Nevertheless, in an abundance of caution, the Court will allow Plaintiff until February 1, 2012, to file a motion for leave to file an amended complaint if he believes that he can do so in good faith. If no such motion is filed – or if leave to amend is denied on futility grounds – the Court will (1) enter a further order dismissing the federal claims with prejudice and the state claims without prejudice, (2) enter judgment on the federal claims, and (3) terminate this case in federal court.